### E. L. KREGLO *et al. vs.* GEORGE FULK *et al.*

### G. T. LICKLIDER *et al. vs.* SAME.

#### July Term, 1868.

1. The writ of supersedeas stays the proceedings in the state they were when it was allowed, and, therefore, when the execution of a judgment is suspended for a given time, and no supersedeas is allowed until after the expiration thereof, and an execution is sued out and possession of property delivered to the plaintiff, no writ of restitution will be awarded until the cause is decided.

2. The action of a circuit court in appointing trustees of church property is the subject of appeal, and the question of the regularity or validity of their appointment cannot be questioned collaterally in an action of ejectment by newly appointed trustees to recover possession from trustees removed.

3. A case in which the law declared in *Venable et al. vs. Coffman et al.,* 2 W. Va., 102, 310, is approved and confirmed.

These causes, which were heard together, arose in Jefferson county. The questions considered involved the possession of certain church property which was respectively claimed by the M. E. Church, of the United States, and the M. E. Church, South. The defendants in error, George Fulk, William H. Byers, John Spangler, J. S. Fleming and John D. Staley, applied to the circuit court of Jefferson, at the April term, 1866, to be appointed trustees of certain church property in Shepherdstown; they produced the minutes of the quarterly conference of the Berkeley circuit, to which the said church belonged, showing their appointment as trustees by that body, in the mode prescribed by the dis-

*See page 1.

cipline of their church; their ecclesiastical connection being with the Baltimore Conference of the M. E Church of the United States. The motion, by consent, was resisted by the plaintiffs in error, G. T. Licklider, Jacob Ferroll, John Crider, L. D. Hess, William Burr and E. L. Kreglo, who appeared in person and by counsel, and who claimed to be the trustees of the church, and claimed ecclesiastical connection with the Baltimore Conference of the M. E. Church, South. Two of the plaintiffs in error, Licklider and Ferroll, were the only trustees living to whom the property had been originally conveyed in 1854, and the others had been subsequently appointed. The court below being of opinion that it was "necessary to effect and promote the purpose of the conveyance for the benefit of said church and congregation," appointed the defendants in error trustees of the property. The plaintiffs in error being in possession of the property, the other parties brought a suit of ejectment to recover it. Upon certain agreed facts, mainly those given above, the jury found for the plaintiffs below, who were defendants in error here. After the facts had been agreed, the defendants below moved the court to instruct the jury that the plaintiffs below were not entitled to maintain their action of ejectment, which the court refused, and they excepted. And the court subsequently, on inquiry from the jury, instructed them that the plaintiffs were the legal trustees, whereupon the defendants again excepted.

A preliminary motion was made in this court by the plaintiffs in error, which appears in the opinion of the judge who pronounced the judgment of the court thereon.

*Charles J. Faulkner*, on behalf of the plaintiffs in error, maintained that the circuit court erred in holding that the appointment, on motion, of the defendants in error as trustees, at the April term, 1866, could divest the legal title existing in the plaintiffs in error by virtue of the deeds of conveyance under which the latter held the property.

The statute of Virginia, chap. 77, gives no authority to the circuit court, upon motion, to remove any *living* and

*acting* trustee, holding that relation to the property under a deed.

The 9th section of the act authorizes that court to appoint trustees, either where they were or are none, or in place of *former* trustees, *and change those so appointed,* whenever it may seem to the court proper to effect or promote the purposes of the conveyance; but it nowhere authorizes that court by this summary proceeding, upon motion, to remove *acting* and *living trustees,* holding their power under a conveyance, and possessing the legal title vested in them by such deed. See Code of 1860, p. 412, and the original act on the same subject, 1841–2, p. 60, chap., 102.

This court may well have been misled in the construction which it has given to this statute in the case of *Venable, &c.,* vs. *Coffman, &c.,* 2 W. Va. Rep., 318, unaided by a particular reference to the history of this provision, and in the absence of any allusion to that important section of this chapter, which has been erroneously *omitted* from the Code of 1860. That omitted section furnishes the true key to the construction of the statute. With the aid of that section it may be very clearly seen where the circuit courts, as courts of *law,* have cognizance of these cases on motion, where the parties should proceed by bill in *chancery* to compel the execution of a trust.

The omitted section will be found as section 13th, chap. 77, of the Code of 1849, p. 363. Mr. Muhford, in compiling the Code of 1860, had no authority to omit that section. It was wholly an error of omission on his part. The act of the 19th of March, 1860, under which he acted, authorized him to prepare a second edition of the Code of Virginia, in which all alterations and amendments made by the general assembly subsequent to the first edition shall be inserted. The general assembly has never since 1849, altered, modified or repealed the 13th section as embraced in the Code of 1849. This the court would be satisfied of after a careful examination of all the session acts since that day. It must, therefore, be regarded as a careless omission from Mr. Munford's compilation; but still it is the law of this State, as

what is called the " Code of 1860" has never been re-enacted or adopted as a system of laws by the State of Virginia, and possesses no authority except so far as, like the work of Mathews, it may be found to be an *accurate* compilation of the laws actually in force.  With this section recognized as a part of the statute, its construction becomes clear and harmonious.  The provision in the 9th section for the appointment of trustees was clearly for the purpose of vesting the legal title in persons who could defend and protect the property in controversies with *third persons*.  And this seems to be the views of the revisors, for in a note they say, "the appointment of trustees will not of itself take away title from any one.  It *only* furnishes the means of asserting or defending the title of the congregation, if the lands has in fact been dedicated to their use."  Notes to chap. 77, p. 411.

The motion which is now the subject of inquiry is based upon the allegation that the trustees in office were violating the trust set forth in the deed conveying the property for the use of the congregation, by giving the control and possession of the church property to one of these ecclesiastical parties, thereby virtually excluding the other, and the object of this motion is to redress the alleged wrong by obtaining the appointment of additional trustees to overrule the action of the existing trustees.  It must seem very extraordinary that a question of so grave and important a character should be determinable upon the hearing of a mere motion, more especially when trustees are charged with a breach of trust.  All the analogies of the law would seem to require that they be called upon in court to answer for their violation of duty in such form and way that they will have full opportunity to explain and defend their conduct, and to protect themselves by evidence.  This opportunity is furnished by the 13th section so erroneously omitted from the Code of 1860, and was the proceeding adopted in the cases of *Brook, &c.,* vs. *Shacklett,* and *Carter* vs. *Wolff,* 13 Grat., 301, and is the only proceeding which has so far been sanctioned by the courts of Virginia in cases similar to those now before the court.

*Stanton & Allison* for defendants in error.

The question presented to the court in this case is not whether there was error in appointing these trustees without notice, but whether the appoinment is *coram non judice* and void for want of notice; because if it was only error the order and judgment of the court in appointing trustees is valid and binding until it is reversed.

The judgment of a court of competent jurisdiction over the parties and the subject matter is binding until it is reversed, and cannot be impeached collaterally.

The plaintiffs below offer this order in evidence to maintain their action.

The defendants seek to impeach it by showing that it was irregular for want of notice. This is impeaching it collaterally. It can only be impeached directly by an appeal or writ of error, or by some proceeding to reverse it. All other modes of attacking it are collateral. *Cottom vs. Cottom*, 4 Rand., 193–4.

The rule is well laid down by Judge Tucker in *Fisher vs. Bassett*, 9 Leigh, 131. He says: "the county court is a court of record, and its judgments or sentences cannot be questioned collaterally in other actions provided it has jurisdiction of the cause; and this is to be understood as having jurisdiction over the subject matter, for though it may be that the facts do not give jurisdiction over the particular case, yet if the jurisdiction extends over that class of cases then the judgment cannot be questioned, for then the question of jurisdiction enters into and becomes an essential part of the judgment of the court."

That the circuit court had power to appoint trustees for church property is a proposition not to be controverted. Whether it was necessary to the exercise of that jurisdiction that notice should be served upon the trustees to be removed was a question for that court to determine. Having exercised it, whether there is error in its judgment or not, its judgment is not void.

In the case of *Burnley vs. Duke*, 2 Rob., 129, the same doctrine was laid down by Judge Allen with his usual pre-

cision and accuracy. He says, "the court is of opinion that as the county court of Orange county had general jurisdiction to grant letters of administration when a proper state of facts existed, whether the court erred or not in determining that the facts were proved upon which power to grant administration in the particular case depended is not to be inquired into collaterally. Until such grants or orders were reversed or revoked they conferred on the grantees all the powers of rightful administrators."

In the case of *Cox* vs. *Thomas*, 9 Grat., 324, it appeared upon the face of the judgment of the circuit court that the execution upon which the money was collected issued from the county court, and the judgment was rendered by the circuit court on notice and motion against the sheriff. A creditor was only authorized by law to recover by motion in the court from which the execution issued.

The question was, as the circuit court clearly erred in taking jurisdiction of the case whether its judgment was void or merely erroneous and voidable.

Judge Allen, in delivering the opinion of the court, says: "The only question then would seem to be whether the subject matter was within the jurisdiction of the court; if it was, if the jurisdiction extended over that class of cases, it was the province of the court to determine for itself whether the particular case was one within its jurisdiction. The circuit court is a court of general jurisdiction, taking cognizance of all actions at law between individuals, with authority to pronounce judgments and issue executions for their enforcement.     *     *     *     *     *     *

"Where its jurisdiction is questioned it is bound to decide the question for itself. Nor is it bound to set forth on the record the facts upon which its jurisdiction depends. Whenever the subject matter is a controversy between individuals the jurisdiction is presumed from the fact that it has pronounced judgment; and *the correctness of such judgment can only be inquired into by some appellate tribunal.*"

The court in this case refers to the common law authorities from which the principle is derived.

The case of the Marshalsea 10, Coke 76, Drury's case 8, Coke 141; *Tarlton* vs. *Fisher*, Doug. Rep., 671.

There is a large class of cases, arising mainly in the States admitted into the Union since the adoption of the constitution of the United States, arising under laws authorizing the sales of real estate by administrators and guardians for the payment of debts and the maintenance and support of infants. The Ohio reports are full of them. Many of them have found their way into the supreme court of the United States. We will only ask the attention of the court to the case of *Grignou's lessee* vs. *Astor*, 2 How., 334; 15 Curtis, 128. In that case the appellants claimed title under the heirs at law of the intestate, whose land had been sold by his administrator for the payment of debts, and the appellee claimed under a sale made by the administrator under an order of court for the payment of debts.

The record showed that the petition was presented to the county court of Brown county on the 10th of January, 1826, and the order of sale made on the same day without any attempt to give notice to the heirs, or even naming them in the petition, and without any proof as to the existence of any debts, or the want of personal assets to pay them.

The case was decided by the court upon the sole ground that the county court of Brown county was a court of general jurisdiction, authorized by the laws of Michigan to sell land for the payment of debts. That the forms of proceeding whether in *rem* against the property or in *personnam* against the heirs, whether notice should be given to the heirs, whether any and what proof of the existence of debts, and the want of personal assets, were all questions that were necessarily submitted to the county court of Brown county and decided by it. That being a court of general jurisdiction, its judgments could not be impeached collaterally, but were final and conclusive until they were reversed by an appellate court. This case is abundantly sustained by numerous decisions of the supreme court of the United States, referred to in the opinion of the court in that case.

To the same point we refer to *Daily's lessee* vs. *Carson*, 9 Ohio Rep., 149; *Keighencey* vs. *Pendleton*, 15 Ohio Rep., 735–754; *Lessee of Cochran* vs. *Loring*, 17 Ohio Rep., 409; *Harter's lessee* vs. *Johnson*, 6 Ohio Rep., 87–89; *Ludlow's heirs* vs. *Johnson*, 3 Ohio Rep., 541, 560.

These cases go vastly beyond the case at bar. They hold that the judgment of a court of competent jurisdiction divesting the title of heirs, whether infants or adults, of the title to the lands descended to them, without any notice actual or constructive, to them of the pendency of the proceeding, is not void, but is valid and binding until reversed by an appellate court. And this is beyond all controversy the well settled law.

In the case at bar the appellants had no beneficial interest whatever in the premises in controversy. They were mere naked dry trustees holding the legal title for the sole and exclusive use and benefit of the church.

There is no mode known to the law by which they could by any possibility profit themselves one dollar by holding the title. It would not make them freeholders so as to qualify them as jurors. There is no power of disposition by which they might derive profit from the sale. If they should be ordered by the proper authorities of the church to make a conveyance of the church property they could make no charge for it beyond the expenses they might incur for preparing title papers and procuring stamps. It is not an interest, it is not property in them which the law will protect, except for the benefit of their *cestui que trusts.*

The trustee in a deed of trust to secure the payment of debts has an interest in the commissions and compensation which the law allows him for making the sale. Hence the trustee and the *cestui que trusts* are entitled to notice of a motion to remove one trustee and appoint another. Code of 1860, p. 735, sec. 5. Where the law intends that notice shall be given of the removal of one trustee and the appointment of another it directs that notice shall be given. And the fact that notice is required by the statute in one

case and not in the other leaves the implication almost irresistible that it was not contemplated that it should be given where the law did not require it. But it is said that the appoinment of the new trustees could not divest the legal title of the old ones.

Admitting the appointment of the trustees to be valid until reversed, we do not see how any such question can arise.

The law in express terms provides that upon the appointment of trustees "the legal title to such land shall for that purpose be vested in the said trustees for the time being, and their successors." Code of 1860, p. 412, sec. 9. The deeds under which the appellants claim are to them "their heirs, successors and assigns" in trust, &c. If they all died without having successors appointed the legal title would vest in the heirs of the last survivor in trust.

If they conveyed it by authority of the church it would vest in their grantees or assignees in trust. If they were superseded by the appointment of other trustees in their places, the trustees so appointed were their "successors" and the title vested in them in trust. Looking at the law and the title papers in the record, we cannot see upon what ground it can be claimed that the title of the appellants did not vest in the appellees as their successors *eo instanti* upon the appointment. No argument can make the proposition plainer and we submit it without further remark.

But it is said that the 9th section of chapter 77 of the Code does not authorize the circuit court in a summary way without notice to remove an active living trustee, and divest a legal title under a deed. That, according to our understanding, is precisely what the Code does authorize the court to do. But it is insisted that the original 13th section of this chapter is still in force, and that by that section a bill in equity may be filed to compel a proper execution of the trust.

We will not go into the very difficult and doubtful question whether that section is repealed or not, because we do not deem it at all material to the question before the court.

Certainly there is no conflict or incongruity in the sections. It is certainly very proper that the church authorities should have power to compel a trustee to perform his duty, and that they should have power to remove him whether he performs his duty or not.

Finally it is argued that the property belongs to the "local congregation" and not to the church at large. And the case of *Brooke* vs. *Shacklett*, 13 Grat., is cited in support of that proposition. It would be enough for us to say that that was the leading and controlling question in the Greenbrier church, case 2, W. Va. Rep., and it was decided adversely to the claim set up by the appellants. But there is a further trouble in this case. The record does not show that the appellants represent the local congregation. The record shows that the local congregation is divided; that the appellants represent that portion or part of the local congregation which is attached to the Baltimore Conference, that recognizes the authority of the M. E. Church South. That the appellees represent that portion of the local congregation which is connected with the Baltimore Conference that recognizes the authority of the M. E. Church of the United States. Which of them represents the major part of the congregation does not appear, nor is it important, according to the decision in the Greenbrier Church case, and also in the case of *Brooke* vs. *Shacklett*, as we understand it. We are wholly at a loss, therefore, to understand upon what grounds a reversal of this judgment can be claimed.

The circuit court has appointed one set of trustees and removed another, and this order making the appointment is still in full force. There is nothing in the record to show that the appellees do not represent the proper authorities of the church, whether the church at large or the local congregation is to be regarded as the church. If the removal of one set of trustees and the appointment of another passes the legal title from the trustees removed to the trustees appointed as their successors, then the judgment of the circuit court must be affirmed.

MAXWELL, J.   On the motion for a writ of restitution, Judge Maxwell said:

The defendants here recovered a judgment in the circuit court of Jefferson county, on the 26th day of April, 1867, against the plaintiffs here, for the possession of certain real estate, but the parties against whom the judgment was recovered, desiring to present a petition to this court for a supersedeas to the said judgment, obtained from the said circuit court an order suspending the execution of such judgment for thirty days. After the expiration of the thirty days, and before a supersedeas was allowed to the judgment, an execution was sued out and possession of the property delivered to the plaintiffs below. The cause is not now ready for final hearing, but the plaintiffs here, after having first given the defendants here notice, move this court for a writ of restitution to be restored to the possession of the property. The supersedeas stays the proceedings in the state they were when it was allowed, until the case is decided. If the judgment of the court below is reversed it will be proper to award a writ of restitution to restore the parties to the possession of the property of which they have been dispossessed by the execution; but this court has no power to award the writ until the case is decided.

The motion must, therefore, be overruled.

On the merits of the case.

BROWN, President. These two cases were heard together and involve the same question, which is whether in an action of ejectment by trustees appointed under the 9th section of chapter 77, Code of 1860, against the former trustees removed, to recover the trust property, the regularity and validity of that appointment can be drawn into question collaterally? In the case of *Venable* vs. *Coffman*, 2 W. Va., 102, this question was considered and decided, and upon a reconsideration of the subject I see no cause to depart from that decision. It has been claimed that the 13th section of chapter 77, Code of 1849, p. 363, omitted inadvertently from the Code of 1860, affects this case. But that

only provides that any member of a religious congregation may file a bill in chancery to compel a proper execution of the trust by the trustees. But that remedy existed without the statute, and exists yet under the general jurisdiction of a court of equity. It is merely cumulative and does not change the construction of the 9th section of chapter 77, Code of 1860.

The objections taken to the order appointing the plaintiffs in the ejectment must be overruled, and the judgments of the court below affirmed, with damages and costs to the defendants in error.

Judge Maxwell concurred.

JUDGMENT AFFIRMED.